IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
  : 
  : CASE NO.  4:09 CV 2594
DERRICK POWELL,   Petitioner     :
  : <u>MEMORANDUM OF OPINION AND</u>
        -vs-                 : <u>ORDER DISMISSING PETITION FOR</u>
  : <u>WRIT OF HABEAS CORPUS</u>
  : 
  : 
J.T. SHARTLE, <u>et</u> <u>al.</u>        :
              Respondents.   :
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      Before the court is <u>pro</u> <u>se</u> petitioner Derrick Powell's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  (Doc. 1).  Mr. Powell, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton) seeks an order from this Court returning him to a lower security prison, restoring good time credits forfeited, as well awarding him damages in the amount of $500,000.00.  (Doc. 1).  Mr. Powell also requests permission to proceed <u>in forma pauperis</u>.  (Doc. 3).

**I. Background**

     In August 2008, Mr. Powell was incarcerated at United States Penitentiary Lewisburg (USP Lewisburg), a minimum security facility in Pennsylvania.  On or about 11 and 12 August 2008, an employee of a local motel saw Mr. Powell entering a guest room of the White Deer Motel between 11:00 am and 1:00 pm.  When prison staff

presented the employee with an institutional photograph of the petitioner, he positively identified Mr. Powell as frequent visitor to the motel in the months preceding. A unit team investigation on this matter was conducted and concluded on 26 August 2008. An incident report was issued on the same date charging Mr. Powell with "Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Inst. (Most Like Code 200A) and Being In An Unauthorized Area" in violation of Codes 299 and 316. According to the report, the motel employee stated: "Yes, this guy has been here a lot the past couple of months. He comes here after 11 am and is with Raymond and meets with some girls." Mr. Powell was provided a copy of the incident report the same date it was issued. (Inc. Rpt. USP Lewisburg of 8/26/08).

After receiving notice of his rights on 28 August 2008, a disciplinary hearing was held on 29 September 2008. Petitioner requested staff representation and Mr. Mutchler appeared on his behalf, but petitioner "made no specific request of him as a staff representative in this case. Mr. Mutchler stated he had no specific statement to make regarding this particular incident." (Inc. Rpt. at ¶ II, E.)

*Mr. Powell's Evidence*

At the hearing Mr. Powell denied the charges, and claimed the incident report was a "fabrication." He testified that he never "set foot in the White Deer Motel" and whoever identified him on the property was mistaken. Mr. Powell claimed that his typical work day started with cutting the grass, that between 11:00 a.m. and 12:00 p.m. he would start trash pickup runs. Then, he would return to the garage and remain there "all afternoon studying Spanish with inmate Angel Perdomo."

2

He claimed the eyewitness testimony of the motel clerk was suspect because no one referred to inmate Raymond Wilmore as "Raymond." Furthermore, Mr. Wilmore's family wrote a letter to Mr. Powell explaining that they had stopped by the White Deer Motel and no one admitted seeing him or petitioner at the motel. Further, according to Wilmore's family, not one employee stated that they had spoken with anyone from the Bureau of Prisons. Petitioner offered this as proof that the accusations against him were a fabrication and respondents were retaliating against him for refusing to testify against inmate Wilmore earlier.

Mr. Powell called four witnesses. However, because three of the witnesses were employed at FCC Allenwood, their written testimony was read during the hearing in lieu of making a personal appearance. Employees from the FCC Allenwood, a facility on Mr. Powell's trash route, acknowledged seeing trash trucks travel through the complex, but none of the employees were certain of the exact time or location. Inmate Angel Perdomo was to be the final witness, but he was not called to the hearing because he was housed at a different institution. In his written statement, Mr. Perdomo testified Mr. Powell "is not with me all the time. I never left the garage. The only thing I helped him with was to teach him Spanish. I don't pay attention to where or when he worked. I worked the garage and he worked landscaping." (Inc. Rpt.,¶ III,C.,3.)

As further evidence to support his case, Mr. Powell requested a video surveillance tape in front of each FCC Allenwood building on his trash route. The discipline hearing officer ("DHO") denied the request as irrelevant because "at best, any such video footage would only document his presence in front of each of the institutions

3

for the brief period of time it took for he and Wilmore to load trash into the truck from those locations." (Inc. Rpt.,¶ III,C.,3.)

Mr. Powell also argued that it would have been "ridiculous" for him and Mr. Wilmore to show up at the motel in prison khakis, driving a trash truck. He also claimed he could not defend himself from the motel employee's accusations without knowledge of the employee's identity. Finally, he claimed the photograph used to identify him was three years old and it would have been impossible to accurately identify him because his hairstyle was "dramatically different." All of these defenses were considered by the DHO.

*The DHO's Conclusions*

The hearing officer concluded the greater weight of evidence supported a finding that Mr. Powell committed the prohibited act charged in the incident report. The DHO based his conclusion on the statement of the eyewitness who positively identified Mr. Powell on the property and the fact that his facial features had not changed since the date of the photograph. The DHO further noted that Mr. Powell and Mr. Wilmore could have met Ms. Jefferson off-site with a change of clothes before entering the motel; that none of Mr. Powell's witnesses corroborated his whereabouts; and that the White Deer Motel employees may have denied their involvement to Mr. Wilmore's family for fear of retaliation.

In addition to the incident report and the investigation, the DHO considered the written witness statements, Mr. Powell's approved visitor list, and guest registration forms at the White Deer Motel. The incident report indicates that BOP staff members visited the White Deer Motel in late August 2008, identified themselves as BOP

4

employees and brought photographs of Mr. Powell and Mr. Wilmore. At that time, a motel employee mentioned that Mr. Powell used to visit with another man named "Raymond." It was then the BOP staff shared Mr. Wilmore's photograph, who the motel employee identified as the second guest. A motel registration card also named Samira Jefferson, who is also listed on Mr. Wilmore's approved visiting list. The registration card revealed Ms. Jefferson had been a guest of the motel on more than one occasion. After identifying both inmates, the motel employee stated he never knew the individuals were prison inmates.

Mr. Powell was sanctioned with the loss of 27 days GCT, disciplinary transfer, and the loss of commissary, telephone and visitation privileges for 270 days. The final report was delivered to Mr. Powell on 27 January 2009. He fully exhausted his administrative remedies to the General Counsel. His petition to this Court followed.

## II. Jurisdiction under 28 U.S.C. § 2241

Claims asserted by federal prisoners seeking to challenge the manner in which their sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)). Thus, petitioner has properly asserted his claims under § 2241 against the warden at F.C.I. Elkton.

## III. Law and Argument

*Mr. Powell's Petition for Habeas Corpus*

In his petition, Mr. Powell requests that he be returned to a minimum security facility; that previous privileges be restored; that his good time credits be restored; and

5

that he be provided various other forms of relief. Mr. Powell argues he is so entitled because the disciplinary action against him was based on "falsified and fabricated" evidence. He essentially asks the Court to reject the evidentiary grounds for the DHO's disciplinary action against him and to accept his version of events.

*Disciplinary Hearings and the Right to Due Process*

When a prisoner faces the loss of good time credits, due process requires that he receive the following hearing rights: 1) written notice of the hearing at least 24 hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). Further, some evidence must exist to support the disciplinary conviction. Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985).

Mr. Powell essentially maintains that his due process rights were violated because the DHO's decision was not supported by the evidence. This Court's review of the quantum of evidence supporting a prison disciplinary decision is limited to determining whether *some evidence* supports the decision. Id. at 455 (emphasis added). The Court is not permitted to re-weigh the evidence presented to the DHO. Id. Prison officials' determinations in disciplinary cases must be made quickly in a highly charged atmosphere, and the "Constitution does not require evidence that precludes any conclusion but the one reached by the disciplinary board." Id. at 456-57.

The requirements of due process are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced ... ." United States v. Commissioner of Immigration, 273 U.S.103, 106 (1927). The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact, and the revocation of good time credits is not comparable to a criminal conviction. Wolff, 418 U.S. at 556. Thus, neither the amount of evidence necessary to support such a conviction, nor any other standard greater than "some evidence" applies in this context. See Jackson v. Virginia, 443 U.S. 307 (1979); Superintendent v. Hill, 472 U.S. at 456.

The Court's review of the incident report and the BOP's response to Mr. Powell's appeal reveal that the petitioner received all due process protections required by Wolff. The DHO's conclusion that Mr. Powell engaged in some prohibited act was based on evidence that included the incident report, a report from the officers who interviewed the eyewitness at the motel, the testimony of petitioner's witnesses, motel registration information showing that Ms. Jefferson was a motel guest and an approved visitor on Mr. Wilmore's list,[1] and the likelihood motel employees withheld the fact they spoke to BOP employees for fear of retaliation from Mr. Wilmore's family.

Mr. Powell's claim he never set foot on the motel property is refuted by the statement of the motel employee's positive identification. The BOP's decision not to identify that witness was reasonable considering the potential for retaliation. See Wolff,

---

[1] Mr. Powell includes letters from the store manager where Ms. Jefferson worked stating she was at work on 11 and 12 August 2008. Since the witness stated he saw petitioner with "some girls" on those dates, petitioner's evidence does not preclude the presence of other females at the motel on those dates.

418 U.S. at 567-68 (prisoners do not have a constitutional right to confront and cross examine witnesses in disciplinary proceedings). Furthermore, while Mr. Powell's hairstyle may have been different in the photograph presented to the witness, there is no suggestion that his facial features were not the same. Mr. Powell's disagreement with the DHO's findings can only be addressed by re-weighing the evidence presented to it, which this Court is not permitted to do. Superintendent, Mass. Corr. Inst., 472 U.S at 455.

Because "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board," Mr. Powell's various factual assertions which he believes cast doubt on the DHO's conclusion are without merit.[2] See id. at 457. Simply put, these arguments are beyond the scope of the Court's inquiry. Satisfying the standard of "some evidence" does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Under these circumstances, Mr. Powell's claim that he never visited the White Deer Motel creates no legal basis to attack the DHO's findings. The only relevant question before this Court is whether there is some evidence in the record that could support the conclusion reached by the disciplinary board. See Wolff, 418 U.S. at 556; United States ex rel. Tisi v. Tod, 264 U.S. 131,

---

[2]These include the claim that he never set foot on the motel property; that the DHO refused to identify the motel witness who identified him; that his hair style was "dramatically different" in the photograph used to identify him; that no one refers to inmate Wilmore as "Raymond"; that the DHO failed to provide proof that certain females were registered at the motel; that the family members were told no one from the motel spoke with BOP employees; and that the DHO failed to provide video surveillance of his trash route.

133-134 (1924). Because that standard has been satisfied, Mr. Powell's petition will be dismissed.

**IV. Conclusion**

For the foregoing reasons, the request to proceed <u>in forma pauperis</u> is granted, and Mr. Powell's petition is dismissed pursuant to 28 U.S.C. § 2243. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

     IT IS SO ORDERED.

                                  /s/ Lesley Wells
                            UNITED STATES DISTRICT JUDGE

Date: 23 June 2010

---

[3] 28 U.S.C. § 1915(a)(3) provides that "an appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith."